# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff | :<br>:   CRIMINAL ACTION<br>: |
| v. | :<br>:<br>:   NO. 05-599 |
| RODERICK PAVON SUTTON,<br>    Defendant | :<br>: |

## M E M O R A N D U M

**STENGEL, J.**                                                                                              **March 8, 2010**

On July 24, 2006, following a trial by jury, Roderick Sutton was convicted of one count of armed bank robbery in violation of 18 U.S.C. § 2113(d); one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1); one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); and one count of possession of five grams or more of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Mr. Sutton now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The grounds for Mr. Sutton's § 2255 claim are that: (1) his grand jury indictment was invalid because a grand juror who was recognized by a witness in the case was not recused; (2) police recording of telephone calls he made while in the Northampton County Jail violated his Sixth Amendment right to counsel; (3) there was insufficient probable cause for his arrest; and (4) his trial and appellate counsel rendered ineffective assistance.

## I. BACKGROUND[1]

Mr. Sutton was charged in a four-count superseding indictment with armed bank robbery, use of a firearm during a crime of violence, possession of a firearm by a convicted felon, and possession with intent to distribute five or more grams of cocaine base, on May 11, 2006. These charges stemmed from his involvement in the armed robbery of the First Commonwealth Federal Credit Union ("Credit Union") in Easton, Pennsylvania.

On January 24, 2005, two men wearing black ski masks entered the Credit Union. One robber, later identified as Mr. Sutton, pointed two handguns at the female tellers and ordered them against the wall, while the other stuffed money into a bag. The tellers were the only two witnesses to the robbery. The robbers left with $15,502 in cash.

Six days later, Mr. Sutton's girlfriend, Jacqueline Olsen, who was living with him at the time, called police to report Mr. Sutton's unauthorized use of her Jeep. At approximately 2:00 a.m., a police officer arrived at the apartment in which they lived, but Mr. Sutton was not home. While talking to the police about Mr. Sutton's use of her car, Ms. Olsen also told officers that she had been told by a friend that Mr. Sutton left a gun in their apartment, and she wanted it to be removed. Ms. Olsen told police that she searched for the gun but had been unable to find it; she did, however, produce three clips of .22 caliber bullets. She then pointed the officers to a hidden compartment in the couch where

---
[1] All facts are taken from relevant trial and hearing transcripts.

the gun could be. When they opened the drawer to the compartment, the officer found a .357 caliber revolver inside. Ms. Olsen said the gun did not belong to her.

Ms. Olsen then told police that she had overheard Mr. Sutton on the phone planning his participation in the robbery and that after it occurred, she saw him with a large amount of cash. The officer then left the apartment. Police returned to the apartment around 5:00 a.m. that morning, after they had determined that Mr. Sutton was on probation for a prior felony conviction. They arrested him for unlawful gun possession as he attempted to drive away in Ms. Olsen's vehicle. Police then searched him incident to the arrest, and found $109 in cash in his pocket with serial numbers sequential to the serial numbers of the uncirculated bills taken from the Credit Union during the robbery. Police also searched the Jeep, finding a .22 caliber pistol, a pellet gun, a black ski mask, and a money wrapper from the credit union.

After arresting Mr. Sutton, the officers obtained consent from Ms. Olsen to perform a search of her and Mr. Sutton's apartment. There, they found $4,800 in sequentially numbered, uncirculated bills, a cell phone box and cell phone, three more clips of ammunition, a loaded .22 caliber pistol, and several copies of a newspaper story about the robbery.

Following his arrest, Mr. Sutton waived his Miranda rights and participated in an interview with FBI agents. He denied knowledge of the robbery and claimed that he lacked the motive to commit it. At the end of this interrogation, police strip-searched Mr.

Sutton and discovered a bag containing 5.8 grams of crack cocaine between his buttocks. After his arraignment, Mr. Sutton was detained at the Northampton County Jail.

Ms. Olsen testified against Mr. Sutton at a jury trial held in this Court from July 18 to July 24, 2006. She explained that, after the robbery, she saw Mr. Sutton with thousands of dollars in cash "sprawled" across their couch and that later that night, she heard Mr. Sutton on the phone with a friend discussing his participation in the robbery. She testified that Mr. Sutton told her he had participated in the robbery. Olsen stated that she recognized the sweat suit worn by one of the robbers on the surveillance tape as belonging to Mr. Sutton. In his recorded calls to Ms. Olsen from prison, Mr. Sutton made a number of incriminating comments, asking her why she had not warned him before his arrest so he could have fled, telling her that she should have kept the money instead of telling the police about the robbery, and confirming his knowledge of the guns found by police.

The jury found Mr. Sutton guilty on all counts. On October 24, 2006, this Court sentenced Mr. Sutton to 252 months' imprisonment, 8 years of supervised release, $15,502 in restitution, and a $400 special assessment. The order of judgment and commitment was entered on November 1, 2006. Mr. Sutton filed a notice of appeal on November 6, 2006, and submitted his Appellate Brief on May 7, 2007. The Third Circuit affirmed Mr. Sutton's conviction in an order issued on March 28, 2008.

## II. DISCUSSION

Mr. Sutton has filed this motion pro se. Although pro se pleadings must be construed liberally, a pro se petitioner must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594 (1972). A prisoner in custody may move the sentencing Court to "vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Section 2255 permits habeas relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 297 (3d Cir. 2004) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. Conversely, a court may dismiss a Section 2255 motion where the records and files show conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

### A. Grand Jury Proceedings and Sixth Amendment Claims

A habeas petitioner is procedurally barred from asserting a claim in a Section 2255 motion that he could have, but failed to raise in his direct appeal. See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). Once claims have been procedurally

5

defaulted, the petitioner can only overcome the procedural bar by showing "cause" for the default and actual "prejudice" from the alleged error or that he is "actually innocent." Id. at 167. A defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel. See <u>United States v. DeRawal</u>, 10 F.3d 100, 104 (3d Cir.1993). Ineffective assistance of counsel claims are generally not considered on direct appeal and are best brought by the defendant in a collateral attack such as this. <u>U.S. v. Thornton</u>, 327 F.3d 268, 272 (3d Cir. 2003).

Mr. Sutton's first and second grounds for relief were raised by his trial counsel in pre-trial motions but were not raised by his appellate counsel on direct appeal to the Third Circuit. Mr. Sutton maintains that his indictment was unconstitutionally issued because of the presence of a juror on the grand jury panel whom Ms. Olsen recognized as another employee from Aetna, the company for which she worked. Mr. Sutton raised this claim in a pretrial motion to dismiss the indictment filed on July 14, 2006 (Document # 68). In that motion, Mr. Sutton set forth, in terms nearly identical to those he now uses in his Section 2255 motion, his claim that the presence of that juror on the panel "tainted" the grand jury proceedings. He argued then as he does now, that, instead of instructing this juror not to participate in the grand jury proceedings related to Mr. Sutton, the government should have removed her entirely from the panel. The government issued a response to Mr. Sutton's pre-trial motion (Document # 69). In a ruling from the bench and in a written order (Document # 70), this Court denied Mr. Sutton's motion.

6

Mr. Sutton's counsel also raised in a pre-trial motion, but not on direct appeal, the claim that statements he made in prison should not have been used against him at trial. Mr. Sutton filed a motion to suppress statements on May 17, 2006 (Document # 27) in which he raised three separate grounds for suppression. One was the Sixth Amendment claim he now makes in his § 2255 motion. In terms he once again recycles here, Mr. Sutton argued that after his right to counsel attached, Ms. Olsen, acting as a government informant, elicited incriminating information from Mr. Sutton when he called her from the Northampton County Jail. In a memorandum and order issued on June 8, 2006 (Document # 53), this Court denied Mr. Sutton's motion, finding that his Sixth Amendment rights were not violated because (1) Ms. Olsen did not act as a government agent, and (2) she did not deliberately elicit incriminating information from Mr. Sutton.

Mr. Sutton raises these claims both independently and as part of his ineffective assistance of counsel claim. These claims are procedurally defaulted, because Mr. Sutton could have raised them on direct appeal but failed to do so. His counsel's failure to raise them will be examined in the context of Mr. Sutton's ineffective assistance of appellate counsel claim.

**B. Ineffective Assistance of Counsel**

In order to prevail on his ineffective assistance of counsel claims, Mr. Sutton must meet the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003). "The benchmark for

judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Mr. Sutton must meet both parts of Strickland's two part test for deficiency and prejudice. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. The measure for counsel's performance under the first prong is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Because a failure on either prong of the Strickland test allows this Court to deny Mr. Sutton's claim, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

Mr. Sutton has two ineffective assistance claims: one based on the performance of his trial counsel, and the other based on the performance of his appellate counsel.

### 1. Ineffective Assistance of Trial Counsel

Mr. Sutton claims that his trial attorney, Benjamin Cooper, Esq., "didn't properly

raise the right issues in pre-trial motions to suppress not just all the statements made after Mr. Sutton's unlawful warrant less [sic] arrest, but all illegally obtained physical evidence" and "failed to object at trial to the mis leading [sic] jury instructions the judge modified without notifying the defense." He provides no further details beyond these conclusory statements.

Effective assistance of counsel does not "demand that every possible motion be filed, but only those having a solid foundation." United States v. Hines, 470 F.2d 225, 232 (3d Cir. 1973). Mr. Sutton's trial counsel filed no fewer than nine pre-trial motions (Documents ## 21–29), including a motion to suppress Mr. Sutton's statements and a motion to exclude evidence of Mr. Sutton's prior convictions at trial. Mr. Sutton fails to articulate how trial counsel's failure to file a motion to suppress "all illegally obtained evidence" fell below objective standards of reasonableness or how this failure was prejudicial. Ms. Olsen consented to the police searches of her home and vehicle that resulted in discovery of the physical evidence—including firearms and cash proven to be taken from the Credit Union during the robbery—that was used against Mr. Sutton at trial. There was no reason to suppress this evidence. Trial counsel's failure to file a frivolous motion to suppress physical evidence was not prejudicial. Mr. Sutton's ineffectiveness claim on this ground is without merit.

Mr. Sutton fails to articulate how this Court modified any jury instruction given at trial in a way that misled the jury. The Third Circuit has ruled that a habeas petitioner

9

fails to meet his burden of showing that counsel's representation fell below an objective standard of reasonableness when his claims are supported by no more than "vague and conclusory allegations" of "unspecified" failures. Zettlemoyer v. Fulcomer, 923 F.2d 291, 298 (3d Cir. 1991). Without facts supporting his contention—some explanation of which jury instruction was misleading and how counsel's representation was unreasonable for failing to object to it—this court simply cannot find that he is entitled to relief on this ground.

Therefore, Mr. Sutton's claim of ineffective assistance of trial counsel is denied.

### 2. Ineffective Assistance of Appellate Counsel

Mr. Sutton was represented in filing his appeal by Robert Epstein, Esq., Michael Raffaele, Esq., and David McColgin, Esq. Mr. Sutton's claim of ineffective assistance at the appellate level stems from his belief that his attorneys should have included three other issues as grounds for the direct appeal of his conviction. He claims he "abetted [them] to argue at least three other seriously prejudicial preserved issues on his Direct Appeal that he knew would be favorable to him at the appellate level," "pleaded with them profusely to include the issues" and that they did not, appealing instead only one issue. Mr. Sutton states that his appellate attorney informed him that it "would only weaken your appeal to include the issues that you want." He believes that, had his attorneys included these issues in his appeal, "the out come [sic] would have, no doubt, been in his favor." In his response to the Government's reply to his motion, Mr. Sutton

adds that he was "not even consulted by his attorneys of what issues would be in his best interest to raise" and "was never informed of what issue(s) was raised in his Direct Appeal, until he received the fully completed brief/appendix."

Mr. Sutton also claims that he received a "certified special attorney-client correspondence" letter from his appellate attorneys following denial of his direct appeal that stated "we filed a frivolous motion ourselves on your behalf." He claims this admission proves that his appellate attorneys' assistance was unreasonable. This letter is not attached to Mr. Sutton's motion.

While it is true that Mr. Sutton is entitled to effective assistance of counsel at the first level of appeal, an appellate attorney "need not advance *every* argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830 (1985) (citing Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308 (1983)) (emphasis in original). However, the attorney must be available to assist in preparation of an appeal, and must "play the role of an active advocate." Id.

Mr. Sutton does not identify the "three other seriously prejudicial preserved issues" he claims his appellate counsel should have raised on his direct appeal. Mr. Sutton's appellate attorneys pursued a Fourth Amendment suppression issue, which is discussed below. This Court will therefore consider whether it was error for them to fail to raise the two other claims Mr. Sutton asserts here: that the Grand Jury proceedings leading to his indictment were unconstitutional, and that his Sixth Amendment rights

were violated when prison officials recorded the calls he made from the Northampton County Jail to Ms. Olsen.

The first claim, that there was unconstitutional error in Mr. Sutton's grand jury indictment, is without merit. Ms. Olsen recognized one of the grand jurors as another employee at Aetna, not as a friend or even as an acquaintance. That grand juror did not recognize Ms. Olsen. In an abundance of caution, the government instructed the juror not to participate further in Mr. Sutton's case, and she agreed. She was reminded at the close of grand jury proceedings not to participate in deliberations, and she again agreed. In sum, there is no evidence that the grand juror was biased, and in any event, she did not take part in issuing the indictment against Mr. Sutton. This claim is meritless. Because it would have been rejected had Mr. Sutton's counsel raised it in his direct appeal, Mr. Sutton has failed to show prejudice on this ground.

The second claim, that Mr. Sutton's Sixth Amendment rights were violated by the admission of recorded conversations during his time at the Northampton County Jail, is also without merit. As this court stated in its written memorandum denying Mr. Sutton's motion to suppress on this ground (Document # 53):

> "The government violates a defendant's Sixth Amendment right to counsel where: (1) the defendant's right to counsel has attached at the time of the alleged infringement; (2) the informant acted as a government agent; and (3) the informant deliberately elicited incriminating information from the defendant. See Matteo v. Superintendent, SCW Albion, 171 F.3d 877, 892 (3d Cir. 1999), cert. denied, 528 U.S. 824 (1999) (citation omitted). In this case, I find that Mr. Sutton's Sixth Amendment rights were not violated because: (1) Ms. Olsen did not act as a government agent; and (2) she did not deliberately

12

elicit incriminating information from Mr. Sutton."

Ms. Olsen made no calls to Mr. Sutton while he was incarcerated at the Northampton County Prison; he initiated all calls to her after he had agreed in writing to the telephone usage procedure at the Jail, which clearly states that all calls are recorded and subject to review by law enforcement officials. There is no evidence Ms. Olsen was a "government informant." This is yet another frivolous claim that would have been denied had it been raised on direct appeal. Mr. Sutton has therefore failed to show prejudice as a result of his appellate counsel's failure to raise this claim.

Mr. Sutton's claim of ineffective assistance of appellate counsel is denied.

**C. Fourth Amendment Violations**

A habeas petitioner is limited in the arguments he may raise as part of a collateral attack on his conviction and sentence. Section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993); see also United States v. Pelullo, 2008 WL 5432635, at *3 (3d Cir. Jan.5, 2009). Moreover, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981); see also United States v. Parker, 2006 WL 759689 at *2 (E.D.Pa. March 23, 2006) (denying the first three claims raised in petitioner's Section

13

2255 petition because they were raised and rejected by the Third Circuit); Lamar v. United States, 2007 WL 1959273 at *2 (D.N.J. July 5, 2007).

The third ground for Mr. Sutton's § 2255 claim - that his arrest violated the Fourth Amendment - was raised during pre-trial proceedings and on his direct appeal to the Third Circuit. In his motion to suppress (Document #27), Mr. Sutton argued that because Ms. Olsen was not a reliable informant and her knowledge of Mr. Sutton's involvement in the bank robbery was based on hearsay, police lacked probable cause to arrest Mr. Sutton based on her tip. This argument was discussed and dismissed in this court's written opinion denying Mr. Sutton's suppression motion (Document #53). Accordingly, Mr. Sutton's Fourth Amendment claims will be denied without consideration on the merits.

## IV. CONCLUSION

Mr. Sutton's Section 2255 petition is denied in its entirety. Because the records and files show conclusively that Mr. Sutton is not entitled to relief, his motion is denied without a hearing.